UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
AGRICULTURAL LOGISTICS LLC,

              *Plaintiff*,

           -against-

SURVIVAL TRANSPORTATION INC. and
HECTOR WENCY SEGARRA RIVERA,

              *Defendants*.

-------------------------------------------------------------X

                                       **REPORT AND**
                              **RECOMMENDATION**
                         22-cv-00873 (MKB) (JMW)

**A P P E A R A N C E S:**

Jennifer Hurley McGay, Esq.
**Lewis Johs Avallone Aviles, LLP**
1377 Motor Parkway, Suite 400
Islandia, New York 11749
*Attorneys for Plaintiff*

*No Appearance by Defendants*

**WICKS**, Magistrate Judge:

      Plaintiff Agricultural Logistics LLC ("Plaintiff" or "Agricultural"), commenced this

action against Defendants Survival Transportation Inc. ("Survival Transportation" or "Survival")

and Hector Wency Segarra Rivera ("Rivera") (collectively, "Defendants") on December 9, 2022,

asserting claims for: (i) liability as against Survival under the Carmack Amendment to the

Interstate Commerce Act of 1877, 49 U.S.C. § 14706 (the "Carmack Amendment") ("Count I");

(ii) breach of contract as against Survival pursuant to Section 9 of the Broker-Carrier Agreement

between the parties ("Count II"); and (iii) breach of oral contract against Defendant Rivera

("Count III"). (ECF No. 1.)  On December 9, 2022, Plaintiff filed a Motion for Default Judgment

against Defendants, which was referred to the undersigned by the Hon. Margo K. Brodie for a

Report and Recommendation ("R&R"). (*See* Electronic Order dated Dec. 14, 2022.) Due to the deficiencies in the filing, the undersigned recommended the Motion be denied, with leave to renew with appropriate documentation consistent with the R&R. (ECF No. 21.) The R&R was adopted in full by Chief Judge Brodie on April 18, 2023, who denied Plaintiff's Motion for Default Judgment without prejudice. (ECF No. 23.) Now before the Court, on referral from Chief Judge Brodie (*see* Electronic Order dated January 16, 2024), is Plaintiff's renewed Motion for Default Judgment against Defendants. (ECF No. 29.) For the reasons stated herein, the undersigned respectfully recommends Plaintiff's Motion for Default Judgment (ECF No. 29) be **GRANTED** *in part* and **DENIED** *in part*.

## BACKGROUND

### I.    Factual Background

The following facts derive from the Plaintiff's Complaint. (ECF No. 1.) Plaintiff is a broker who arranges the transportation of property by motor carriers in interstate commerce. (*Id.* at ¶ 1.) Defendant Survival Transportation is a motor carrier that transports property in interstate commerce (*see id.* at ¶ 3), and Defendant Rivera is the President and owner of Survival as well as a Registered Agent. (ECF No. 29-1 at 6.) On July 7, 2021, Plaintiff and Survival entered into a Broker-Carrier Agreement (hereafter, the "Agreement"). (ECF No. 1 at ¶ 1.) Pursuant to Section 9 of the Agreement, Survival is liable "for the full actual cost, for all loss, damage or liability resulting from their transportation of any property arranged for by Plaintiff." (*Id.* at ¶ 2.) Survival additionally agreed to "pay Plaintiff the full value of any freight loss or damage that are not resolved within ninety (90) days of the date of the claim." (*Id.*)[1]

---

[1] Relevant here, under Section 7 of the Agreement, Survival agreed to be liable for attorney's fees if Plaintiff prevails in any legal dispute. (ECF No. 30-1 at 11.) Section 7 specifically states: "In the event of a breach of this provision, Broker will be entitled to a commission of 25% of the gross transportation revenue

Under the Agreement, Plaintiff arranged to have Survival transport "eight hundred (800) 8.5-inch bromeliad plants, one thousand two hundred (1,200) 6-inch bromeliad plants, one thousand five hundred (1,500) 4-inch bromeliad plants, and two thousand (2,000) 2.5 inch bromeliad plants from the Plants in Design, Inc. in Miami, Florida to Angel Plants in Dix Hills, New York" on or about July 8, 2021 (hereafter, the "Delivery"). (*Id.* at ¶ 3.) Plaintiff alleges this is a valid contract to which Plaintiff performed and Defendants breached, causing damage to Plaintiff. (ECF No. 29-1 at 7.) Specifically, on or about July 8, 2021, Plaintiff alleges Survival received the plants at Plants in Design, Inc. in Miami, Florida in good condition and was issued a Bill of Lading from the shipper. (ECF No. 1 at ¶ 5-6.) The Bill of Lading instructed Survival to transport the load between 60-70 degrees Fahrenheit, however, the instructions on the Load Confirmation stated the temperature was to be between 50-60 degrees Fahrenheit. (*Id.* at ¶ 7-8.) If there is is a discrepancy between the temperature listed on the Load Confirmation and Bill of Landing, it is the motor carrier's (*i.e.*, Survival's) responsibility to confirm the temperature requirements. (*Id.* at ¶ 9.)  The Load Confirmation specifically provides:

> Carriers will be solely responsible for the temperature of their trailer. Any discrepancy regarding temperatures with what is on the rate confirmation versus what is on the Bill of Lading must be brought up to Agricultural Logistics LLC immediately, If the temperature is different Agricultural Logistics LLC must send a new rate confirmation with the correct temperature to show that the carrier called in this difference. Failure to do so could result in a freight claim.

(ECF No. 29-7 at 23.) Survival never contacted Agricultural about this discrepancy. (ECF No. 1 at ¶ 10-11.) Survival's driver set the trailer's temperature to 50 degrees Fahrenheit to make the Delivery. (*Id.*) On July 10, 2021, Survival delivered the plants to Angel Plants, who determined

---

received by Carrier from Broker's customer. Broker will also be entitled to injunctive relief and, if Broker is a prevailing party, Carrier shall be liable for all costs and expenses incurred by Broker including, but not limited to, attorneys' fees and cost." (ECF No. 1-1 at 5.)

the plants to be damaged as a result of being kept at an improper temperature. (*Id.* at ¶ 13.) Agricultural paid Angel Plants $30,520.00 for the damage, and later notified Rivera that the plants arrived frozen on July 12, 2021. (*Id.* at ¶ 15-16.) In an email to Plaintiff, Rivera agreed to reimburse Plaintiff for the value of the damaged plants on or about July 22, 2021, and to be personally liable for this reimbursement. (*Id.* at ¶ 17.) Rivera attached a copy of his own driver's license to the email, which was signed electronically by Rivera as the president of Survival. (*Id.*)[2] On August 2, 2021, Agricultural submitted a Notice of Claim to Survival's insurer, who denied the Claim asserting invalid grounds. (*Id.* at ¶ 18-19.)

## II.    **Procedural Setting**

Following Rivera's failure to issue the reimbursement payment to Plaintiff (*see id.* at ¶ 20-21),[3] Plaintiff commenced this action against Defendants under the Carmack Amendment and for breach of contract, seeking to recover $30,530.00 for the complete loss of the plants that were transported by Survival. (*Id.*) Plaintiff asserts that both Survival and Rivera are jointly and severally liable for the full amount of the loss in value of the plants, $30,530.00. (*Id.* at ¶ 22.) Summonses were issued as to both Survival and Rivera on February 16, 2022. (ECF No. 12 at 2.) An executed summons as to Survival was returned on March 8, 2022, showing that service was made upon Survival via its appointed BOC-3 Agent, Raymond A. Selvaggio, Esq., at his office

---

[2] Rivera wrote a formal letter to Agricultural stating "to agree with the terms of the payment plan of $2,500.00 per month until the balance is paid off, pending if insurance company does not settle claim." (ECF No. 1-6). Rivera also stated that he attached his drivers license and expressed that he hopes "we can move forward through this process quickly…we look forward in continuing our successful relationship." (*Id.*) This formal letter was signed "Hector Rivera" with "President" under his name. (*Id.*)

[3] Plaintiff asserts Rivera additionally agreed over the phone to reimburse Plaintiff for the damaged plants in full and the parties established a payment schedule for the reimbursement. (ECF No. 1 at 7.) Plaintiff asserts it made numerous phone calls to Defendants and sent several correspondences regarding the reimbursement payments but received no response. (*Id.*)

at 120 Main Street, Huntington, New York 11743. (*Id.*) On June 30, 2022, Plaintiff filed a

motion for an extension of time to serve Rivera, and to effectuate such service through

alternative means (ECF No. 8),[4] which was granted by the undersigned on August 20, 2022.

(ECF No. 12.) The undersigned directed Plaintiff as follows:

> On or before September 19, 2022, Plaintiff shall serve the Summons and Complaint
> along with a copy of this Order upon Rivera via email to
> survivaltransportation@gmail.com. Plaintiff is further directed to request both "delivery"
> and "read" receipts, and Plaintiff shall file an affidavit of service through ECF attesting
> that service was made in the manner prescribed herein, attaching a copy of the email,
> delivered, and read receipts. Plaintiff shall also mail the Summons and Complaint along
> with a copy of this Order, and a pre-paid means of returning the waiver form, to
> Survival's business and mailing addresses - 166-10 South Conduit Avenue, Jamaica, NY
> 11434 and 2102 Briarcliff Drive, High Point, NC 27265– and file proof of such service
> on ECF. Last, Plaintiff shall serve the Summons and Complaint upon Rivera to Survival
> via its appointed BOC-3 Agent, Mr. Raymond A. Selvaggio, Esq., at his office at 120
> Main Street, Huntington, New York 11743, and file proof of such service on ECF.

(*Id*. at 12.) Plaintiff served a summons upon Defendants in accordance with the undersigned's

August 20, 2022 Order on September 22, 2022;[5] however, Defendants did not answer or

otherwise appear in this action. (*See* ECF Nos. 16-16.) Plaintiff requested a Certificate of Default

on November 14, 2022, and the Clerk entered default as against Defendants pursuant to Rule

55(a) of the Federal Rules of Civil Procedure ("FRCP") on November 15, 2022. (ECF Nos. 17-

18.) Plaintiff filed a Motion for Default Judgement on December 9, 2022, which was referred to

---

[4] Plaintiff advised the Court that it attempted to serve Rivera on several different occasions at multiple addresses, but was unsuccessful. (*See* ECF Nos. 8, 12.)

[5] Pursuant to the August 20, 2022 Order, on September 16, 2022, Defendants were served with delivery of the Summons and Complaint via email to survivaltransportation@gmail.com, upon their appointed BOC-3 Agent Raymond Selvaggio, Jr. at 120 Main Street Huntington, New York 11743, and via certified mail to 166-10 South Conduit Avenue, Jamaica, New York 11434, as well as 2102 Briarcliff Drive, High Point, NC 27265. (ECF No. 17-1 at 2.)

the undersigned by Chief Judge Brodie for an R&R on December 14, 2022. (*See* ECF No. 19; Electronic Order dated December 14, 2022.)

On December 19, 2022, the undersigned recommended denial of Plaintiff's Motion for Default Judgment without prejudice and with leave to renew, due to procedural deficiencies in the filing. (ECF No. 21.) Specifically, the undersigned noted Plaintiff: (i) had not "provided a 'memorandum of law, setting forth the cases and other authorities relied upon in support of the motion, and divided, under appropriate headings, into as many parts as there are issues[;]'" (ii) had not complied with the Servicemembers Civil Relief Act ("SCRA"); and (iii) had submitted insufficient billing records in support of its application for attorneys fees. (*Id*. at 2-4) (quoting E.D.N.Y. Local Rule 7.1(a)(2)). The R&R was adopted in full by Chief Judge Brodie on April 18, 2023, who denied Plaintiff's Motion for Default Judgment without prejudice and with leave to renew. (ECF No. 23.) Plaintiff filed its renewed Motion for Default Judgement on January 12, 2024, which was subsequently referred to the undersigned by Chief Judge Brodie on January 16, 2024. (*See* ECF No. 29; Electronic Order dated January 16, 2024.) To date, Defendants have failed to appear or otherwise defend this action.

## **THE LEGAL FRAMEWORK**

There is a two-step process for the granting of default judgments under Fed. R. Civ. P. 55. First, the Clerk of the Court enters default when a party fails to plead or otherwise defend the action. *See* Fed. R. Civ. P. 55(a); *see also* E.D.N.Y. Local R. 55.2. After the clerk's certificate of default is issued and posted on the docket, a party may apply for entry of a default judgment. Fed. R. Civ. P. 55(b); *see also* E.D.N.Y. Local R. 55.2(b). The decision to grant a motion for default judgment is left to the discretion of the district court. *United States v.*

*Dougherty*, No. 15-cv-554 (ADS) (AKT), 2016 WL 5112063, at *3 (E.D.N.Y. Aug. 1, 2016), *report and recommendation adopted*, 2016 WL 4705549 (E.D.N.Y. Sep. 7, 2016).

A default – that is, no response to the complaint -- constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-cv-1878(RJD)(JMA), 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (finding that a default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true). However, a plaintiff must still demonstrate that the allegations set forth in the Complaint state valid claims. *See City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (suggesting that "a district court is 'required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law'" prior to entering default judgment (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (alterations omitted)). The Court must therefore ensure: (i) Plaintiff satisfied all the required procedural steps in moving for default judgment, *see* Local Civ. R. 55.2; and (ii) Plaintiff's allegations, when accepted as true, establish liability as a matter of law, *see Finkel*, 577 F.3d at 84.

## ANALYSIS

### I.   Procedural Compliance

Local Civil Rule 7.1 requires motions to include a notice of motion, a memorandum of law, and supporting affidavits or exhibits containing any necessary factual information for the decision of the motion.  E.D.N.Y. Local R. 7.1(a)(1) - (3).  Local Civil Rule 55.2 requires that a party moving for default judgment append to its application the Clerk's Certificate of Default, a copy of the claim to which no response has been made, a proposed form of default judgment, and that all papers submitted to the Court under Rule 55.2(b) be mailed to the party against whom a

default is sought at the last known address of such party with proof of mailing filed with the Court.  E.D.N.Y. Local R. 55.2(b)-(c).

Before a default judgment can be entered for the plaintiff, the SCRA additionally commands that the Court "require the plaintiff to file with the court an affidavit . . . stating whether or not the defendant is in military service and showing necessary facts to support the affidavit." 50 U.S.C. App. § 521; *ADI Glob. Distribution v. Green*, No. 20-CV-03869 (AMD)(JMW), 2023 WL 3355049, at *3 (E.D.N.Y. Apr. 24, 2023) (same), *report and recommendation adopted*, 2023 WL 3346499 (E.D.N.Y. May 10, 2023). "The non-military affidavit must be based not only on an investigation conducted after the commencement of an action or proceeding but also after a default in appearance by the party against whom the default judgment is to be entered." *Apex Mar. Co. v. Furniture, Inc.*, No. 11-CV-5465 (ENV) (RER), 2012 WL 1901266, at *1 (E.D.N.Y. May 18, 2012). To satisfy this requirement, "[c]ertification . . . of a defendant's military status can be obtained from the Department of Defense's Servicemembers Civil Relief Act website." *ADI Glob. Distribution*, 2023 WL 3355049, at *3.

This Court denied Plaintiff's initial Motion for Default Judgment against Defendants without prejudice and with leave to renew upon properly: (i) submitting a memorandum of law in compliance with Local Rule 7.1(a)(2), which requires cases and other authorities relied upon in support of the motion divided under appropriate headings, (ii) complying with the SCRA with respect to Defendant Rivera, which requires an affidavit stating whether or not the defendant is in military service and showing necessary facts to support the affidavit,[6] (iii) providing

---

[6] The undersigned notes that SCRA is inapplicable as to the corporate Defendant, Survival. *See Guanglei Jiao v. Shang Shang Qian Inc.*, No. 18-CIV-5624 (ARR) (VMS), 2020 WL 6370148, at *9 (E.D.N.Y. Aug. 11, 2020), *report and recommendation adopted*, 2020 WL 5105063 (E.D.N.Y. Aug. 31, 2020) (only applying service members civil relief act to the individual defendants).

unredacted billing records except to the extent appropriately redacted for material within the scope of attorney client privilege, and (iv) providing the appropriate biographical information for *all* attorneys, paralegals, or professional support staff that appear on the billing records submitted in connection with the attorneys' fees request. (ECF No. 21.) The Court, noting that these deficiencies were merely exemplars and not an exhaustive list, further cautioned Plaintiff to review the applicable rules pertaining to filing a motion for default judgment. (*Id.*) Plaintiff subsequently filed a renewed Motion for Default Judgment against Defendants (ECF No. 29), which included a Notice of Renewed Motion for Default Judgment (ECF No. 29 at 1), a Memorandum of Law (ECF No. 29-1), Declarations in Support (ECF Nos. 29-2, 29-10, 29-11, 29-12, 29-13, 29-14, 29-15)[7], a copy of the Complaint (ECF No. 29-7), the Certificate of Default as to both Defendants, Survival and Rivera, entered by the Court on November 15, 2022 (ECF No. 29-5), and the Affidavit of service confirming service of the Motion on Defendants. (ECF No. 29-4.)[8]

The Declaration of Jennifer Hurley McGay, Esq. in Support of Plaintiff's Renewed Motion for Default Judgment (ECF No. 29-2), dated January 12, 2024: (i) stated that "Rivera is, upon information and belief, not in active military duty" and (ii) attached a copy of the

---

[7] A declaration "in writing, subscribed and certified or declared to be true under penalty of perjury," as offered here, suffices in place of an affidavit. 28 U.S.C. § 1746.

[8] Plaintiff failed to append to its application a Proposed Form of Default Judgment in compliance with Local Rule 55.2(b), and likewise failed to serve that document upon Defendants in compliance with Local Rule 55.2(c). *See Bhagwat v. Queens Carpet Mall, Inc.*, No. 14CV5474 (ENV)(PK), 2015 WL 13738456, at *1 (E.D.N.Y. Nov. 24, 2015) (collecting cases) ("The fact that some of these items may be found electronically, scattered on the docket, does not absolve a movants of the obligation to collect and append copies to the moving papers."); *Woodway USA, Inc.*, No. 22CV2455EKRER, 2023 WL 2969334, at *7 (internal citations omitted) ("Courts in this District strictly construe these requirements and have found that a movant's failure to comply with Local Rule 55.2(c) warrants denial of the motion for default judgment."). Accordingly, the undersigned recommends this Court grant Plaintiff's Motion for Default Judgment with respect to Defendant Survival (*see infra*), on the condition that Plaintiff complies with Local Rule 55.2. *See Woodway USA, Inc.*, No. 22CV2455EKRER, 2023 WL 2969334, at *7 (finding plaintiff's motion did not comply with Local Rule 55.2 when plaintiff failed to append a proposed form of default judgment).

Servicemembers Civil Relief Act Centralized Verification Service's ("SCRACVS") search results confirming that no one with Defendant Rivera's name and date of birth is in active military service as of December 22, 2023 (ECF No. 29-3.)[9] The undersigned finds Plaintiff's attachment of the SCRACVS's response is sufficient to comply with the SCRA, as it shows "the requisite investigation into [the individual defendants'] military service was performed." *Innovative Sports Mgmt., Inc. v. Triangle Eatery & Bar, LLC*, No. 21CV6909 (AMD)(RER), 2022 WL 18151927, at *10 (E.D.N.Y. Dec. 14, 2022), *report and recommendation adopted*, No. 21CV6909(AMD)(RER), 2023 WL 130835 (E.D.N.Y. Jan. 9, 2023); *see also ADI Glob. Distribution*, 2023 WL 3355049, at *3; *Bhagwat v. Queens Carpet Mall, Inc*., No. 14CV5474(ENV)(PK), 2017 WL 9989598, at *1 (E.D.N.Y. Nov. 21, 2017) (noting "[c]ertification, as to the SCRA, of a defendant's military status can be obtained from the Department of Defense's Servicemembers Civil Relief Act website.") Accordingly, the undersigned finds the Motions for Default Judgment, aside from the Plaintiff's failure to attach a proposed form of default judgment, is otherwise procedurally proper, and turns to the merits of the Motion.

## II.    <u>Default Factors</u>

In evaluating whether to grant a default judgment, courts consider: (i) whether the defendant's default is willful; (ii) whether the defendant has a meritorious defense to plaintiff's

---

[9] The Court notes that it appears Plaintiff did not (or could not) provide the Department of Defense with a social security number for Defendant Rivera, and Sam Yousefzadeh, Director of the Department of Defense, stated that without a social security number, the Department of Defense Manpower Data Center cannot authoritatively assert that this is the same individual that the query refers to because name and date of birth alone do not uniquely identify an individual. (ECF No. 29-3.) Nonetheless, the undersigned finds Plaintiff has otherwise satisfied its "duty to investigate after the default" under the SCRA by submitting the information it did possess regarding Rivera (*i.e*., his name and date of birth) to the Department of Defense. *Bhagwat*, No. 14CV5474 (ENV) (PK), 2017 WL 9989598, at *1.

claims; and (iii) the level of prejudice the non-defaulting party would suffer if the motion for default judgment is denied. *See Trustees of Empire State Carpenters Annuity, Apprenticeship, Lab. Mgmt. Co-op., Pension & Welfare Funds v. Flooring Experts, Inc.*, No. 12-CV-6317 (ADS)(AKT), 2013 WL 4042357, at *2 (E.D.N.Y. Aug. 8, 2013), *report and recommendation adopted*, 2013 WL 4761151 (E.D.N.Y. Sept. 3, 2013). *But see Brown v. Gabbidon*, No. 06-CIV-8148 (HB), 2007 WL 1423788, at *4 (S.D.N.Y. May 14, 2007) ("A discussion of prejudice, willfulness and meritorious defenses is required once there is an entry of default or a default judgment and the court considers a request by a defaulting party to vacate that entry pursuant to Rules 55(c) or 60(b).").

Consideration of these three factors militates toward an entry of default judgment where, as here, Defendants have wholly failed to appear and present any sort of defense, and Plaintiff is left with no further steps to take to secure relief. *See ADI Glob. Distribution*, 2023 WL 3355049, at *4; *see also Flooring Experts*, *Inc*., 2013 WL 4042357, at *3 (when a defendant is continuously and completely unresponsive the failure to respond is considered willful), *report and recommendation adopted*, 2013 WL 4761151 (E.D.N.Y. Sept. 3, 2013); *Empire State Carpenters Welfare v. Darken Architectural Wood*, No. 11-CV-46 (JS)(AKT), 2012 WL 194075, at *3 (E.D.N.Y. Jan. 17, 2012) ("[T]he Court is unable to make a determination whether the Defendants have a meritorious defense since no such defense has been presented to the Court"), *report and recommendation adopted*, 2012 WL 832452 (E.D.N.Y. Mar. 12, 2012); *Northwell Health, Inc. v. Northwell Staffing Agency, LLC*, No. 17-CV-1611 (DRH)(AKT), 2018 WL 1525803, at *9 (Mar. 1, 2018) (noting that denying the motion for default judgment would be prejudicial to Plaintiff since "there are no additional steps available to secure relief in this Court"), *report and recommendation adopted*, 2018 WL 1525698 (E.D.N.Y. Mar. 28, 2018)

(citations omitted).

### III.  <u>Personal Jurisdiction</u>

Preliminarily, when considering a motion for default, a court "may first assure itself that it has personal jurisdiction over the defendant." *Mickalis Pawn Shop, LLC*, 645 F.3d at 133 (citation omitted).  Since a judgment rendered against a defendant over whom the Court does not have personal jurisdiction can be vacated pursuant to Rule 60(b)(4), it "preserves judicial economy for the court to assess personal jurisdiction from the outset and thereby avoid rendering a void judgment." *Foshan Shunde Xinrunlian Textile Co. v. Asia 153 Ltd.*, No. 14-cv-4697 (DLI) (SMG), 2017 WL 696025, at *2 (E.D.N.Y. Jan. 30, 2017), *report and recommendation adopted*, Electronic Order (Mar. 21, 2017).  Here, Defendants have failed to appear in this action such that "a *sua sponte* assessment of personal jurisdiction is appropriate." *Id*. (conducting a *sua sponte* personal jurisdiction analysis on a default motion).  For a court to exercise personal jurisdiction: (i) a plaintiff must complete proper service of process, (ii) there must be a statutory basis for personal jurisdiction that renders such service of process effective, and (iii) the exercise of personal jurisdiction must comport with constitutional due process principles.  *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673. F.3d 50, 60-61 (2d Cir. 2012).

As an initial matter, the undersigned concludes that service was procedurally proper here. Rule 4(c) requires that a summons must be served with a copy of the Complaint and by a person who is at least 18 years old and not a party to the case.  *See* Fed. R. Civ. P. 4(c). Rule 4(e) permits service to individuals either by: (i) delivering a copy of the summons and of the complaint to the individual personally; (ii) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (iii) delivering a copy of each to an agent authorized by appointment or by law to receive service of

process. *See* Fed. R. Civ. P. 4(e). Rule 4(h) additionally provides that a domestic or foreign corporation may be served by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . . ." *See* Fed. R. Civ. P. 4(h)(1)(B); *Hartford Fire Ins. Co. v. Queens Cnty. Carting, Inc*., No. 20 CV 01844 (NSR), 2022 WL 254367, at *2 (S.D.N.Y. Jan. 27, 2022) (quoting Fed. R. Civ. P. 4(h)(1)(A); (e)(1)) ("Under Rule 4(h)(1)(A), a corporation may be served 'in the manner prescribed by Rule 4(e)(1) for serving an individual,' which includes 'following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]'").

On September 16, 2022, Defendants were served with delivery of the Summons and Complaint via email to survivaltransportation@gmail.com, upon their appointed BOC-3 Agent Raymond Selvaggio, Jr. at 120 Main Street Huntington, New York 11743, and via certified mail to 166-10 South Conduit Avenue, Jamaica, New York 11434, as well as 2102 Briarcliff Drive, High Point, NC 27265, in compliance with this Court's prior Order. (ECF No. 17-1 at 2.); *Velez v. Vassallo*, 203 F. Supp. 2d 312, 325 (S.D.N.Y. 2002) (quoting N.Y. C.P.L.R. 308(2)) (Fed. R. Civ. P. 4(e)(1) "permit[s] service on individuals, just as service on corporations, to be made pursuant to the law of the state in which the district court is located. Under New York law, personal service may be effected on an individual by 'delivering the summons within the state to a person of suitable age and discretion at the [person's] actual place of business ... and by mailing the summons to the person to be served at his or her last known residence or ... actual place of business.'"). Therefore, service was proper for both Rivera and Survival Transportation.

"Personal jurisdiction in a diversity case is determined by the law of the state in which the district court sits." *SAS Grp., Inc. v. Worldwide Inventions, Inc.*, 245 F. Supp. 2d 543, 547

(S.D.N.Y. 2003) (citing *Kernan v. Kurz–Hastings, Inc.*, 175 F.3d 236, 240 (2d Cir.1999)). The same goes for a case arising under federal question jurisdiction unless the applicable federal statute contemplates nationwide service of process, which, as relevant here, the Carmack Amendment does not. *See Sea Tow Servs. Int'l, Inc. v. Pontin*, 472 F. Supp. 2d 349, 358 (E.D.N.Y. 2007) (citing *Sunward Elec., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir.2004)); *see also* § 76:667. Service of process in civil action under Carmack Amendment, 32A Fed. Proc., L. Ed. § 76:667 ("The statute providing that the orders, writs, and process of the district courts in enforcement actions under 49 U.S.C.A. Subtitle IV may be served and be returnable anywhere in the United States does not apply to private suits between carriers to enforce liability under a receipt or bill of lading. Service of process must be obtained in a Carmack Amendment suit in the manner generally allowed in the federal courts."). Thus, the Court first looks to New York law for the purpose of determining personal jurisdiction over Defendants in New York. Then, the Court evaluates whether the "exercise of jurisdiction under state law satisfies federal due process requirements of 'fair play and substantial justice.'" *Mortg. Funding Corp. v. Boyer Lake Pointe, LLC*, 379 F. Supp. 2d 282, 286 (E.D.N.Y. 2005) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). Under New York law there are two routes for a court to exercise personal jurisdiction. The Court considers each in turn below.

A. <u>**General Jurisdiction**</u>

 The Court considers this issue in light of the Supreme Court's pronouncements in *Daimler* and *Goodyear*, where the Court stated that other than in the "exceptional case," the exercise of general jurisdiction is confined to a corporation's "place of incorporation and principal place of business." *See Aybar v. Aybar*, 37 N.Y.3d 274, 289, 177 N.E.3d 1257, 1265 (2021) (citing *Daimler AG v. Bauman*, 571 U.S. 117 (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011)). Here, Defendant Survival is a Delaware Corporation, with

14

its place of business in the state of North Carolina, and Defendant Rivera is a resident of the state

of Florida. (ECF No. 1 at ¶ 4-5.)  Therefore, the Court lacks general jurisdiction over both

Survival and Rivera. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) ("For an individual,

the paradigm forum for the exercise of general jurisdiction is the individual's domicile").

      **B.**    **<u>Specific Jurisdiction</u>**

However, pursuant to New York's long-arm statute, CPLR 302(a), a court "may exercise

personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . .

transacts any business within the state," as long as the Plaintiff's "cause of action aris[es] from"

that "transact[ion]."  CPLR 302(a).  This is known as specific jurisdiction and sometimes

referred to as long-arm jurisdiction.  To exercise specific jurisdiction through New York's long-

arm statute, "two requirements must be met: (1) The defendant must have transacted business

within the state; and (2) the claim asserted must arise from that business activity." *Sole Resort,*

*S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (citing *McGowan v.*

*Smith,* 52 N.Y.2d 268, 273, 437 N.Y.S.2d 643, 419 N.E.2d 321 (1981)).  "To determine whether

a party has 'transacted business' in New York, courts must look at the totality of circumstances

concerning the party's interactions with, and activities within, the state." *D.H. Blair & Co. v.*

*Gottdiener*, 462 F.3d 95, 105 (2d Cir. 2006).  Courts consider the following factors:

> (i) whether the defendant has an on-going contractual relationship with a New
> York corporation; (ii) whether the contract was negotiated or executed in New
> York and whether, after executing a contract with a New York business, the
> defendant has visited New York for the purpose of meeting with parties to the
> contract regarding the relationship; (iii) what the choice-of-law clause is in any
> such contract; and (iv) whether the contract requires franchisees to send notices
> and payments into the forum state or subjects them to supervision by the
> corporation in the forum state.

*Sunward, Inc.*, 362 F.3d 17 at 22 (quoting *Agency Rent A Car Sys., Inc. v. Grand Rent A Car*

*Corp.,* 98 F.3d 25, 29 (2d Cir.1996) (internal citations omitted)).

"Section 302(a) also requires that the claims asserted 'aris[e] from any of the acts' that provide the basis for exercising jurisdiction." *Sea Tow Servs. Int'l, Inc.*, 472 F. Supp. 2d at 360 (E.D.N.Y. 2007) (quoting CPLR 302(a)). "[A] claim 'aris[es] from' a particular transaction when there is 'some articulable nexus between the business transacted and the cause of action sued upon.'" *Id.* (quoting *Sole Resort*, 450 F.3d at 103). "A plaintiff must establish the court's jurisdiction with respect to each claim asserted." *Sunward*, 362 F.3d at 24; *see also Int'l Equity Investments, Inc. v. Opportunity Equity Partners, Ltd.*, 475 F. Supp. 2d 456, 460 (S.D.N.Y. 2007) (noting that "personal jurisdiction must be determined on a claim-by-claim basis").

Plaintiff alleges it entered into an Agreement with Survival which is "governed by and construed in accordance with the applicable federal laws of the United States or, alternatively, the laws of the State of New York[,]" and provides that "[v]enue of any action or proceeding for the enforcement of this Agreement shall be exclusively in a state or federal court in New York." (ECF No. 1-1 at 7.) Plaintiff claims that Survival "maintains an office located in Jamacia, New York" and was completing a delivery to Dix Hills New York on the day of the alleged breach of contract. (*Id*. at 3.) Plaintiff additionally asserts that Rivera, although a Florida resident, is subject to the personal jurisdiction of the courts of New York pursuant to CPLR § 302 because he "transacts business in the State of New York" as President of Survival. (*Id*.)

"The exercise of long arm jurisdiction over Defendants by a New York court must also satisfy constitutional due process standards." *Id.* To satisfy the requirements of due process, the defendant's activities in New York must constitute "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum States, thus invoking the benefits and the protection of its laws." *NW Direct Design & Mfg., Inc. v. Glob. Brand Mktg., Inc.,* No. 98-cv-4756 (LAP), 1999 WL 493348, at *3 (S.D.N.Y. July 12, 1999)

16

(quoting *Burger King*, 471 U.S. at 475).  This involves a two-fold inquiry: (1) "minimum

contacts," and (2) "reasonableness."  *Sea Tow Servs. Int'l*, 472 F. Supp. 2d at 360.  *First*, the

Court is satisfied that Plaintiff's claims arise out of Defendants' contacts with New York and

support specific jurisdiction because this lawsuit stems from an alleged breach of the Agreement,

which provided for the safe delivery of the plants to New York, and parties transacted business

in New York. (ECF No. 29-1). *Second*, the exercise of specific jurisdiction is reasonable.  The

factors supporting this conclusion include:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2)
> the interests of the forum state in adjudicating the case; (3) the plaintiff's interest
> in obtaining convenient and effective relief; (4) the interstate judicial system's
> interest in obtaining the most efficient resolution of the controversy; and (5) the
> shared interest of the states in furthering substantive social policies.

*Id*. (quoting *Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Calif., Solano Cty.*, 480 U.S. 102, 113

(1987)). Plaintiff chose to bring this case in this district likely because Survival Transportation is

subject to the Court's personal jurisdiction and maintains its a BOC-3 agent for to accept service

of process in New York and maintains a place of business in Jamaica, New York. (ECF No. 29-

1.) Additionally, the burden on Defendant, if any, to litigate here does not weigh strongly in its

favor because "'the conveniences of modern communication and transportation ease what would

have been a serious burden only a few decades ago.'"  *Id*. (citation omitted).  Moreover, Rivera

operates his business in New York.  The Court finds the remaining factors to be neutral, and

given Defendants' default, it has not been provided, nor does it find, any reason why exercise of

specific jurisdiction would be unreasonable. Accordingly, based upon the foregoing, the

undersigned finds that there is a sufficient basis to exercise personal jurisdiction over both

Defendants.

**IV.**    **Liability**

Well-pleaded allegations in a Complaint are presumed true when a defendant (like here) fails to present a defense to the court.  *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 82 (E.D.N.Y. 2020).   However, "a plaintiff still must demonstrate that the factual allegations set forth in [the] complaint state valid claims to relief."  *Id.* (citing *United States v. Meyers*, 236 F. Supp. 3d 702, 708 (E.D.N.Y. 2017)).  Here, the undersigned addresses liability as to both Survival Transportation and Rivera.

**A.**    **Preemption of State and Common Law Claims**

The Carmack Amendment to the Interstate Commerce Act provides in relevant part:

> A carrier providing transportation or service . . . shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service . . . are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, [or] (B) the delivering carrier  . . . . Failure to issue a receipt or bill of lading does not affect the liability of a carrier.

49 U.S.C. § 14706(a)(1). The Carmack Amendment "addresses the subject of carrier liability for goods lost or damaged during shipment, and most importantly provides shippers with the statutory right to recover for the actual loss or injury to their property caused by any of the carriers involved in the shipment."  *Cleveland v. Beltman N. Am. Co.*, 30 F. 3d 373, 377 (2d Cir. 1994).  "In enacting it, Congress intended to provide interstate carriers with reasonable certainty and uniformity in assessing their risks and predicting their potential liability."  *Project Hope v. M/V IBN SINA*, 250 F.3d 67, 73 n.6 (2d Cir. 2001).  The Carmack Amendment accomplished this task in two ways.  *Id*.  *First*, by "establishing a single uniform regime for recovery by shippers 'directly from [the] interstate common carrier in whose care their [items] are damaged . . . .'" *Id*. (internal citation and quotation marks omitted).  *Second*, by "preempting [the] shipper's state and common law claims against a carrier for loss or damage to goods during shipment."  *Id*.

It is well established that the Carmack Amendment completely preempts state law as to claims arising from the shipment of goods in interstate commerce and has been broadly interpreted by the Supreme Court.  In the often-cited *Adams Express Co.*, the Supreme Court stated:

> [The Carmack Amendment] embraces the subject of the liability of the carrier under a bill of lading . . . . Almost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject, and supersede all state regulation with reference to it.

*Adams Express Co. v. Croninger*, 226 U.S. 491, 505-06 (1913).  Indeed, "the words of the [Carmack Amendment] are comprehensive enough to embrace responsibility for all losses resulting from any failure to discharge a carrier's duty as to any part of the agreed transportation . . . ." *Georgia, F. & A. Ry. Co. v. Blish Milling Co.*, 241 U.S. 190, 196 (1916); *see also Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 318 (1981) ("The Interstate Commerce Act is among the most pervasive and comprehensive of federal regulatory schemes.…").  This area of law has also been described by the Second Circuit as "an area of interstate commerce law that has been fully occupied by Congress' passage of a statute delineating what remedies are available, leaving no room for additional state or federal common law causes of action."  *Cleveland v. Beltman N. Am. Co.*, 30 F.3d 373, 374 (2d Cir. 1994); *see also North American Phillips Corp. v. Emery Air Freight Corp.*, 579 F.2d 229, 233-34 (2d Cir. 1978) ("Congress has created a broad, comprehensive scheme covering the interstate shipment of freight . . . [t]his has occupied the field to the exclusion of state law.").

"Carmack applies both to claims of damage or loss while goods are in interstate transit, but also to related services, including arranging for, receiving, delivering, storing, handling, packing and unpacking such goods."  *See Brody v. Liffey Van Lines, Inc.*, No. 13-CV-5719 (CM), 2014 WL 2450807, at *4 (S.D.N.Y. May 27, 2014*); see also Project Hope v. M/V IBN*

*SINA*, 250 F.3d 67, 70 (2d Cir. 2001) (finding defendants jointly and severally liable under the

Carmack Amendment when the carrier transported the product at the wrong temperature, and it

spoiled). However, "[s]ome courts have held that 'claims based on conduct separate and distinct

from the delivery, loss of, or damage to goods escape preemption' under the Carmack

Amendment." *RDK NY Inc. v. City of New York*, No. 21-CV-1529 (EK) (RER), 2023 WL

348467, at *4 (E.D.N.Y. Jan. 20, 2023) (citing *Smith v. United Parcel Serv.*, 296 F.3d 1244,

1249 (11th Cir. 2002) (collecting cases)); *see also Koch v. McConnell Transp. Ltd.*, No. 13-CV-

3016 (LDW), 2015 WL 3470182, at *6 (E.D.N.Y. May 29, 2015) (same).  To this end, the

question presented here is whether Plaintiff's claims for breach of contract based on Defendants'

failure to safely transport the plants and reimburse Plaintiff for the damages are preempted by the

Carmack Amendment.

　　　　Here, the undersigned finds allegations underpinning Plaintiff's Carmack claims and

breach of contract claims are closely related. As mentioned, the Carmack claims involve

Survival's alleged failure to safely transport the goods because its driver did not set the

temperature of the truck refrigeration unit correctly as instructed in the Bill of Lading. Likewise,

the crux of Plaintiff's breach of contract claims against both Defendants is that they failed to pay

Plaintiff the full amount of the loss associated with the totaled goods ($30,530.00) within ninety

(90) days of the Notice of Claim pursuant to the Agreement. "Though [Plaintiff's] breach of

contract claim is framed differently, *au fond*, they involve the same core issues." *Azzil Granite*

*Materials, LLC v. Canadian Pac. Ry. Corp.*, No. 20-CV-2381 (JMW), 2023 WL 3346765, at *7

(E.D.N.Y. May 10, 2023), *aff'd sub nom. Azzil Granite Materials, LLC v. Canadian Pac. Ry.*

*Co.*, No. 23-833, 2024 WL 1827289 (2d Cir. Apr. 26, 2024) (holding plaintiff's breach of

contract claims were preempted by the Carmack Amendment as a matter of law where plaintiff's

breach of contract claims were "inevitably linked" to its Carmack claims); *Hammock v. Moving State to State LLC*, No. 18CV5628 (RPK) (ST), 2021 WL 4755519, at *6 (E.D.N.Y. Sept. 2, 2021), *report and recommendation adopted in part*, No. 18CV5628RPKST, 2021 WL 4398086 (E.D.N.Y. Sept. 26, 2021) ("*Hammock*") ("Plaintiff's property lost or damaged is central to all his state statutory and common law claims. His claims of breach of contract directly arise out of the Defendants' failure to deliver his property as promised. The Defendants held themselves out as carriers and accordingly face liability under the Carmack Amendment, which preempts these state and common law claims.").

Plaintiff's "assertion of damages and financial losses underscore the similarities between the Carmack and breach of contract claims." *Id*. at *8. *First*, under the Carmack Amendment, Plaintiff asserts it sustained "actual monetary loss in the amount of $30,530.00." (ECF No. 1 at ¶ 5.) *Second*, Plaintiff's breach of contract claim as against Survival asserts "as a result of Survival's actions in failing to transport the bromeliads safely to destination, Plaintiff has suffered loss of goodwill with Plants in Design, which is one of Plaintiff's largest customers, lost profits, and caused Plaintiff to incur attorney's fees and costs in the initiation and maintenance of this action." (*Id*. at ¶ 4.) *Third*, Plaintiff's breach of oral contract claim as against Rivera asserts identical damages in the amount of $30,530.00 for River's alleged failure to reimburse Plaintiff for the loss. (*Id.* at ¶ 5.)

Ultimately, "[f]or the Court to allow [Plaintiff] to escape preemption by creatively reframing its claims, and then 'making finer distinctions between types of contract damages[,] would defeat the purpose of the statute, which was to create uniformity out of disparity.'" *Id*. at *8 (quoting *Hall v. N. Am. Van Lines, Inc.*, 476 F.3d 683, 688 (9th Cir. 2007)). Therefore, "[c]onsidering the foregoing and the wide reach of the Carmack Amendment, the Court

concludes as a matter of law that [Plaintiff's] breach of contract claims are preempted by the Carmack Amendment." *Id*. at *9; *see also Hammock*, No. 18CV5628RPKST, 2021 WL 4755519, at *5-6 (collecting cases) ("The Carmack Amendment preempts all state and common law claims related to the loss or damage of property during interstate shipment. Attempting to obtain money damages for that loss of [] property is the exact issue for which the Carmack Amendment applies."); *Project Hope*, 250 F.3d at 73 n.6 (2d Cir. 2001) (internal citation and quotation marks omitted) (Carmack intends to "provide interstate carriers with reasonable certainty and uniformity in assessing their risks and predicting their potential liability" by "preempt[ing] [the] shipper's state and common law claims against a carrier for loss or damage to goods during shipment").

### B.   *Prima Facie* Case

A plaintiff seeking to recover from a carrier for damage to a shipment under the Carmack Amendment must establish a *prima facie* case by showing: (i) "delivery in good condition," (ii) "arrival in damaged condition," and (iii) "the amount of damages that resulted from the transportation." *Press Clean Sales, LLC v. Maxum Trans Inc.*, 233 F. Supp. 3d 360, 364–65 (E.D.N.Y. 2017) (collecting cases). Here, Plaintiff has provided a Bill of Lading listing Survival as the carrier to transport the shipment from Plants in Design, Inc. in Miami Florida to Angel Plants in Dix Hills, New York, and alleged in the Complaint that the shipment was delivered to Plants in Design, Inc in good order and condition and intended for transit by Survival, and was damaged while being transported by Survival to Angel Plants in Dix Hills, because, upon receipt of the plants for pick-up, Survival Transportation set the temperature of the trailer to 50 degrees Fahrenheit without confirmation of the proper temperature. *See generally*, ECF No. 1. "A shipper may prove that the goods were delivered to the carrier in good condition with 'a clean bill of lading for the shipment, provided that the cargo was packaged in a way that permitted its

22

inspection by the carrier' . . . [h]owever, in the absence of contrary evidence, the carrier's acknowledgment on the bill of lading is sufficient to support a finding that the goods were in good condition at the point of origin." *Press Clean Sales, LLC*, 233 F. Supp. 3d at 364–65 (quoting *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

*Finally*, Plaintiff alleges – and has presented evidence to demonstrate – an inspection conducted at Angel Plants on the same day of delivery showed that the goods arrived damaged "due to the improper temperature" of Survival's trailer, resulting in a loss of $30,530.00 to Plaintiff. *See* ECF No. 29-1 at 6 ("[U]pon receipt of the plants for pick up, Survival Transportation set the temperature of the trailer to 50 degrees Fahrenheit without confirmation of the proper temperature. Upon delivery to Angel Plants, the plants were inspected and determined to be a total loss due to the improper temperature of the trailer."). Thus, the undersigned finds "Plaintiff's undisputed allegations are sufficient to establish liability" as against Survival. *Press Clean Sales, LLC*, 233 F. Supp. 3d at 365; *see also Fed. Ins. Co. v. CLE Transportation, Inc.*, No. 18-CV-11119 (JPO), 2020 WL 1503455, at *2 (S.D.N.Y. Mar. 30, 2020) ("In the complaint, [plaintiff] alleges that the shipment of confections, drinks, and candy were initially delivered to [defendant] in 'good order and condition.' The complaint also alleges that [defendant] failed entirely to deliver the bequeathed bonbons to California. Pursuant to its obligations under the insurance contract, [the insurer] paid at least $96,850.35 for the losses suffered by [the insured]. Thus, [plaintiff] has sufficiently alleged the elements of a claim under the Carmack Amendment against [defendant].").

C.      **Piercing the Corporate Veil**

Plaintiff argues Rivera should be held jointly and severally liable along with Survival for the requested amount of money damages, attorneys' fees, and costs, however, Plaintiff does not specify the legal theory by which it seeks to hold Rivera jointly and severally liable. *See* ECF No. 29-1 at 10. Rather, Plaintiff merely alleges that: (i) "[a]n oral contract existed between Plaintiff and Hector Rivera, in which the parties agreed, *inter alia,* that Plaintiff would be reimbursed in full for the damaged plants and established a payment schedule for same[,]" (ii) "Rivera, in his capacity as President of Survival Transportation and personally, agreed to the aforementioned payment plan to reimburse the full value of the damaged plants in order to avoid the cost and expense of litigation, and exposure to prevailing party attorney fees[,]" and (iii) thereafter, Rivera failed to remit payment to Plaintiff, breaching the oral contract. (ECF No. 1 at ¶ 2-4.)

*Preliminarily*, the undersigned notes that "[j]oint and several liability is permitted under the Carmack Amendment." *Hammock*, No. 18CV5628RPKST, 2021 WL 4755519, at *4 (citing *Project Hope*, 250 F.3d at 67). However, Plaintiff's allegations are insufficient to hold Rivera jointly and severally liable under the circumstances presented in the complaint.  To recover for breach of contract under New York law, a plaintiff must prove "(a) the existence of a contract between plaintiff and defendant; (b) performance of the plaintiff's obligations under the contract; (c) breach of the contract by the defendant; and (d) damages to the plaintiff caused by the defendants' breach." *Javier v. Beck*, 2014 WL 3058456, at *9 (S.D.N.Y. July 3, 2014). "[N]on-parties to a contract are not bound to it.[,] [h]owever, New York law allows a plaintiff to pierce the corporate veil and sue a non-party for breach of contract when the non-party is an alter ego of

one or more signatories." *Paguirigan v. Prompt Nursing Emp. Agency LLC*, 286 F. Supp. 3d 430,

440–41 (E.D.N.Y. 2017). To pierce the corporate veil, a party must establish:

> (a) the owners exercised complete domination of the corporation with respect to the
> transaction at issue; and (b) that such domination was used to commit a fraud or wrong
> that injured the party seeking to pierce the veil. The required inquiry under New York
> law is fact-intensive; indeed, veil-piercing is not "well-suited" even for summary
> judgment resolution.

*Id*. at 40-41 (internal citations omitted) (cleaned up). "Alter ego liability exists when a parent or

owner uses the corporate form to achieve fraud, or when the corporation has been so dominated

by an individual or another corporation (usually a parent corporation), and its separate identity so

disregarded, that it primarily transacted the dominator's business rather than its own." *OOO v.

Empire United Lines Co.*, 557 F. App'x 40, 45–46 (2d Cir. 2014), as corrected (Feb. 7, 2014)

(internal citation and quotation marks omitted).

Here, the undersigned finds Plaintiff has not "made any showing that there has been an

abuse of corporate form or other fraudulent conduct," by Defendant Rivera, and therefore,

"cannot carry the 'heavy burden' required to apply the veil piercing/alter ego theory." *Spano v. V

& J Nat'l Enters., LLC*, 264 F.Supp.3d 440, 452 (W.D.N.Y. 2017) (citations omitted); *Highland

CDO Opportunity Master Fund, L.P. v. Citibank, N.A.,* 270 F.Supp.3d 716, 732 (S.D.N.Y. 2017)

("[I]t is well-established that an ordinary breach of contract, without evidence of fraud or

corporate misconduct, is not sufficient to pierce the corporate veil."); *see also Capmark Fin.

Grp. Inc. v. Goldman Sachs Credit Partners L.P.*, 491 B.R. 335, 350 (S.D.N.Y. 2013)

(dismissing veil piercing claim where plaintiff did "not adequately allege[ ] ... that [defendant]

used its ... corporate form[ ] as a 'sham' to perpetrate a 'fraud or injustice.'"). Accordingly,

because "breach of contract is insufficient to support piercing the corporate veil as a matter of

law[,]" the undersigned finds a mere breach of an alleged oral contract between Rivera and

Plaintiff does not justify piercing the corporate veil. *See e.g., Micro Fines Recycling Owego LLC

*v. Ferrex Eng'g, Ltd.,* 585 F. Supp. 3d 289, 298 (N.D.N.Y. 2022), *appeal withdrawn sub nom. Micro Fines Recycling Owego LLC v. Clarkson*, No. 22-513, 2022 WL 4086695 (2d Cir. July 25, 2022).

## V.    Damages

Once liability for default is established, the next inquiry is damages. *See Griffiths v. Francillon*, No. 10-CV-3101, 2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012) (quotations omitted), *report and recommendation adopted*, 2012 WL 1354481, at *2 (Apr. 13, 2012) (While "the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded.")  A party's default constitutes a concession of all well pleaded allegations, however, such default "is not considered an admission of damages."  *Double Green Produce, Inc. v. F. Supermarket Inc*., 387 F. Supp. 3d 260, 271 (E.D.N.Y. 2019) (quoting *Cement & Concrete Workers Dist. Council Welfare Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012)).  Here, Plaintiff seeks an award of: (i) $30,530.00 in money damages on it claims for relief in the Complaint and post judgment interest, (ii) $15,375.10 for Lewis Johs Avallone Aviles, LLP attorneys' fees as well as $3,691.70 for costs and expenses incurred by Lewis Johs and the process server, (iii) the sum of $5,062.00 attorney's fees reported by Bridgette Mannino Blitch, Esq. for her firm, Blitch Westley, outside transportation law counsel for Plaintiff, as well as $27.23 in costs/expenses, and (iv) pre-judgment interest at the rate of 9% from November 19, 2021 until the date judgment is entered. (ECF No. 29-1 at 12.)

### A.    Actual Loss

Under the Carmack Amendment, a carrier is "liable to the person entitled to recover under the receipt or bill of lading" and an injured party is entitled to recover "the actual loss or

injury to the property caused by [a carrier's unreasonable delay or loss of the shipment]." *See* 49 U.S.C. § 14706(a)(1). "Generally, actual loss is measured as the difference between the sound market value and the value as damaged at destination. The Second Circuit has recognized that relief available under Carmack includes all damages resulting from any failure to discharge a carrier's duty with respect to any part of the transportation to the agreed destination." *Press Clean Sales, LLC*, 233 F. Supp. 3d at 365 (internal citations omitted) (cleaned up). Here, Plaintiff sustained actual monetary loss in the amount of $30,530.00 as a result of the damage to the plants caused by Survival.

Therefore, based upon the foregoing, the undersigned recommends that Plaintiff be awarded $30,530.00 for the injury to the property. *See e.g., Press Clean Sales, LLC*, 233 F. Supp. 3d at 365.

### B.    Interest

Plaintiff further claims entitlement to prejudgment interest from November 19, 2021 – ninety (90) days from when the Notice of Claim was filed – to present. An award of prejudgment interest is within the Court's discretion. *See generally Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.*, 67 F.3d 1063, 1071 (2d Cir. 1995). The undersigned finds an award of prejudgment interest appropriate in this case. *See, e.g., Fireman's Fund Ins. Co. v. Never Stop Trucking, Inc.*, 2009 WL 3297780, at *3 (E.D.N.Y. Oct. 13, 2009) (in Carmack Amendment case, finding award of prejudgment interest "necessary to fully compensate [plaintiff] and make them whole*"); Pro Transp. Servs., Inc. v. Anka Trucking, Inc.*, 2009 WL 6066292, at *2 (E.D.N.Y. Sept. 25, 2009) (recommending award of interest to ensure that plaintiff is fully compensated for it loss), *adopted*, 2010 WL 1048805, *1 (E.D.N.Y. Mar. 22, 2010). As stated, the accrual date for the purpose of calculating prejudgment interest in this matter is November

19, 2021. "As to the rate of interest, it is recommended that the rate provided by 28 U.S.C. § 1961 be utilized." *Press Clean Sales, LLC*, 233 F. Supp. 3d at 365–66 (collecting cases). Accordingly, the undersigned respectfully recommends that prejudgment interest at the rate specified in 28 U.S.C. § 1961 be added to the award to be calculated by the Clerk of the Court at the time judgment is entered. *See e.g.*, *Fireman's Fund Ins. Co. v. Never Stop Trucking, Inc*., No. 08-CV-3445(FB)(RER), 2009 WL 3297780, at *4 (E.D.N.Y. Oct. 13, 2009).

### C.     Attorney's Fees, Costs and Expenses

Fed. R. Civ. P. 54(d)(1) provides that "unless a federal statute . . . provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." "Since the Carmack Amendment does not disallow the recovery, Plaintiff would therefore be entitled to such costs." *Press Clean Sales, LLC*, 233 F. Supp. 3d at 366. *First*, with respect to attorney's fees, Courts have "broad discretion in determining the amount of a fee award." *Vincent v. Comm'r of Soc. Sec*., 651 F.3d 299, 307 (2d Cir. 2011). The lodestar calculation, which is "the product of a reasonable hourly rate and the reasonable number of hours required by the case," "creates a 'presumptively reasonable fee." *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). "A party seeking an award of attorney's fees bears the burden to document 'the hours reasonably spent by counsel, and thus must support its request by providing contemporaneous time records reflected, for each attorney and legal assistant, the date, the hours expended, and the nature of the work done.'" *Bds. Trs. Ins., Annuity, Scholarship, & Apprenticeship Training Funds Sheetmetal Workers' Int'l Ass'n, Loc. Union No. 137 v. Liberty Signs, Inc.*, No. 10-cv-1737 (ADS) (AKT), 2011 WL 4374519, at *6 (E.D.N.Y. Aug. 30, 2011), *report and recommendation adopted*, 2011 WL 4373893 (E.D.N.Y. Sept. 19, 2011). "[A] party moving for attorneys' fees must [also] provide the credentials law school matriculation, practice area, and years of

experience in the relevant practice area to substantiate the requested hourly rate for each individual." *Desly Int'l Corp. v. Spartak*, No. 13-CV-2303 (ENV) (LB), 2018 WL 4522081, at *8 n.11 (E.D.N.Y. Aug. 1, 2018). Upon review of all of these documents, "[t]he court must assess whether the hours expended by plaintiff's counsel were reasonable, and exclude any hours that were excessive, redundant, or otherwise unnecessary to the litigation." *See Nuriddinov v. Masada III, Inc*., No. 15-CV-5875, 2017 WL 9253401, at *12 (E.D.N.Y. July 24, 2017), *report and recommendation adopted*, 2018 WL 1251335, at *1 (Mar. 12, 2018). With this framework in mind, the undersigned reviews Plaintiff's counsel's submissions.

As stated, Plaintiff requests: (i) $15,375.10 for Lewis Johs attorneys' fees as well as $3,691.70 for costs and expenses incurred by Lewis Johs and the process server, and (iii) the sum of $5,062.00 attorney's fees reported by Bridgette Mannino Blitch, Esq. for her firm, Blitch Westley, outside transportation law counsel for Plaintiff, as well as $27.23 in costs/expenses. From February 28, 2022 through February 28, 2023, Lewis Johs has expended time on this matter which includes analysis of the background of the dispute, relevant documents and potential legal claims and the preparation of the Federal Complaint, supervision of the multiple service attempts on Defendants, the preparation of a Motion for Extension of Time to Serve Defendant and for Substitute/Alternative Service and the filing of a Motion for Default Judgment. *See generally*, ECF No. 29-2. Specifically, Lewis Johns expended approximately 61.2 hours on this matter at a billing rate of $250 per hour. (*Id*.) Additionally, since November 11, 2021, Blitch Westley Barrette reports the 23.4 total hours expended on this matter with a billing rate in of $275 per hour for attorney time and $125 per hour for paralegal time. (*Id*.) Blitch Westley Barrette's time on this matter included preparing the pre-suit demand letter; assisting in the preparation of the Federal Complaint filed herein, supervision of the service attempts on

Defendants, supervision and review of the flings in this case with updates to client, and the preparation of this supplemental submission to request attorney's fees and pre-judgment interest against the Defendants. (*Id.*)

Relevant here, a reasonable hourly rate is "'the rate a paying client would be willing to pay,' based on the 'prevailing [hourly rate] in the community . . . where the district court sits.'" *E. Sav. Bank, FSB v. Whyte,* No. 13-cv-6111 (CBA) (LB), 2014 U.S. Dist. LEXIS 196448, at *10-11 (E.D.N.Y. Aug. 11, 2014) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2007)).  In assessing a reasonable hourly rate, the court takes into consideration the market rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *Gesualdi v. Bestech Transp., LLC*, No. 14-CV-1110 (JS) (ARL), 2022 WL 866853, at *2 (E.D.N.Y. Mar. 23, 2022) ("The party applying for fees must support the hourly rates it claims with, for example, evidence of counsel's expertise and prevailing market rates."). Here in the Eastern District of New York, hourly rates currently appear to "generally range from $300.00 to $450.00 for partner-level attorneys, and $200.00 to $325.00 for those with less experience." *Perrone v. Amato*, No. 09-CV-316 (SIL), 2022 WL 595187, at *3 (E.D.N.Y. Feb. 27, 2022); *see also Pilitz v. Inc. Freeport*, No. 07- CV 4078 ETB, 2011 WL 5825138, at *4 (E.D.N.Y. Nov. 17, 2011) (collecting cases); *Hall v. Prosource Techs., LLC*, No. 14-CV-2502 (SIL), 2016 WL 1555128, at *12 (E.D.N.Y. Apr. 11, 2016 (noting that "[c]ourts in the Eastern District of New York award hourly rates ranging from $200 to $450 per hour for partners") (citation omitted)). Plaintiff's Counsel have additionally submitted declarations attesting to the relevant experience, and credentials for each attorney and paralegal working at their respective firms. *Desly Int'l Corp. v. Spartak*, 2018 WL 4522081 at *8 n.11

(stating that attorney credentials must be provided "to substantiate the requested hourly rate for each individual."). The undersigned finds the hourly rates charged by Plaintiff's Counsel are eminently reasonable in light of their credentials.

Likewise, the undersigned finds the hours recorded were "reasonably expended on the litigation." *See Sagax Dev. Corp. v. ITrust S.A.*, No. 19-CV-3386 (RA) (JW), 2022 WL 2663488, at *1 (S.D.N.Y. July 11, 2022) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983)) ("A court-awarded attorneys' fee must compensate only for 'hours reasonably expended on the litigation,' not for 'hours that are excessive, redundant, or otherwise unnecessary.'"); *C.f. Jianmin Jin v. Shanghai Original, Inc.,* No. 16-cv-5633 (ARR) (JO), 2020 U.S. Dist. LEXIS 149337, at *23 (E.D.N.Y. Aug. 18, 2020) (reducing attorney's fees for "poor billing practices" which included overbilling for certain tasks and submitting vague entries). *Second*, with respect to the costs and expenses incurred in this action, Plaintiff requests $3,691.70 for costs and expenses incurred by Lewis Johs and the process server, as well as $27.23 in costs/expenses reported by Blitch Westley. In light of Plaintiff's reported difficulty in serving Defendants in this matter, the undersigned notes the service costs and expenses may be higher than usual, and finds that Plaintiff has nonetheless adequately "establish[ed] the amounts with the requisite certainty by providing invoices itemizing the amounts it is owed" in support of its Motion for Default Judgment. *Garpo Marine Servs. Inc. v. Island Romance*, No. 19-CV-6875-EK-SJB, 2021 WL 6805890, at *9 (E.D.N.Y. Sept. 30, 2021), *report and recommendation adopted*, No. 19-CV-6875(EK)(SJB), 2022 WL 341194 (E.D.N.Y. Feb. 4, 2022).

Based upon the foregoing, Plaintiff's application for attorney's fees is granted in the amount of $20,437.10, and expenses in the amount of $3,718.93, for a total of $24,156.03.

## CONCLUSION

For the foregoing reasons, the Court respectfully recommends that Plaintiff's Motion for Default Judgment be **GRANTED** as to Defendant Survival and **DENIED** as to Defendant Rivera, ***but only on the condition that Plaintiff complies with Local Rule 55.2*** (*see supra* ANALYSIS, I. Procedural Compliance, Fn. 8), and that judgment be entered against Survival in the amount of: (i) $30,530.00 in monetary damages, (ii) $20,437.10 in attorney's fees, and (iii) $3,718.93 in expenses and costs, for a total of $50,994.33, plus prejudgment interest from November 19, 2021 through entry of judgment. *See e.g., Press Clean Sales, LLC*, 233 F. Supp. 3d at 366.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served on Counsel for Plaintiff. Counsel for Plaintiff is directed to serve a copy of this R&R on Defendants via first-class mail and via email and promptly file proof of service on ECF within two business days. Any written objections to this R&R must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this R&R either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's

decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated:      Central Islip, New York
            August 7, 2024

RESPECTFULLY RECOMMENDED,

/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge